# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL SCHILLACI,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No.  1:20-cv-00628-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL AND ENTERING JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY<br><br>(ECF Nos. 20, 22) |

## I.

## INTRODUCTION

April Schillaci ("Plaintiff" or "Schillaci") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from bilateral carpal tunnel syndrome, lumbago, vaginal prolapse, rectocele, cystocele, fibromyalgia, obesity, and asthma.  For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1]  The parties have consented to the jurisdiction of the United States magistrate judge and this action has been assigned to the undersigned magistrate judge for all purposes.  (ECF Nos. 10, 11, 12.)

**II.**

**BACKGROUND**

### A.    Procedural History

On September 14, 2017, Plaintiff filed a Title II application for disability insurance benefits, alleging a period of disability beginning on February 17, 2015.  (AR 15, 154-55.)  Plaintiff's claim was initially denied on December 12, 2017, and denied upon reconsideration on March 7, 2018.  (AR 84-89, 91-96.)  On October 30, 2018, Plaintiff appeared before Administrative Law Judge Jane M. Maccione (the "ALJ"), for an administrative hearing.  (AR 27-62.)  On February 21, 2019, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 12-26.)  On February 27, 2020, the Appeals Council denied Plaintiff's request for review.  (AR 1-6.)

Plaintiff filed this action on May 2, 2020, and seeks judicial review of the denial of her application for disability benefits.  (ECF No. 1.)  On February 22, 2021, Plaintiff filed an opening brief.  (ECF No. 20.)  On March 31, 2021, Defendant filed a brief in opposition.  (ECF No. 22.)  No reply brief was filed by Plaintiff.

### B.    Hearing Testimony

Plaintiff testified at the October 30, 2018 hearing in person with the assistance of counsel.  (AR 27-62.)

Plaintiff previously worked in the print shop for Modesto City Schools, running the print machine, and preparing documents for the classrooms throughout the district.  (AR 31.)  Plaintiff described the printing machines as huge, and that she would carry cases of paper that weighed 40 pounds.  (Id.)  Plaintiff did not lift more than 50 pounds by herself.  (AR 32.)  Plaintiff primarily stood for the job, and did not supervise or train anybody.  (Id.)

Plaintiff worked as a type of receptionist for O'Neill's Second Nature, a holistic health business.  (AR 33.)  She would greet clients, restock the shelves with vitamins, answer the phones, took messages and scheduled appointments using paper, did filing, handled money, sold the products, and did not run a cash register but did run a credit card machine.  (AR 33-34.)  Plaintiff would lift more than 20 pounds, but not more than 50 pounds.  (AR 35.)  The job was a

mixture of standing and sitting, but more like 75% standing.  (AR 35.)  Plaintiff trained others in this position on the daily duties, so they could cover other shifts.  (Id.)  Plaintiff did not supervise others.

When the ALJ asked about a reference in a medical record from 2017 where Plaintiff averred to difficulty working due to problems in the abdomen, Plaintiff denied that she was working during that time period.  (AR 36.)

The Vocational Examiner Mr. Schmidt (the "VE") asked what type of printing machine was used, and Plaintiff confirmed it was digitally operated, and printing was through the attached computer.  (AR 36.)  Plaintiff did not manually operate the presses, or do photocopying.  (AR 36.)  Plaintiff would sometimes do the binding of the pages after printing, such as by spiral binding and tape binding.  (AR 37-38.)

When asked what was precluding Plaintiff from being able to work, Plaintiff testified "[l]ifting, standing for long periods, pain."  (AR 38.)  The ALJ then asked about the fact that the State office tried to send Plaintiff for a consultative exam by a psychologist and an internal medicine doctor, and Plaintiff did not attend the exam.  (AR 38.)  Plaintiff stated she did not go because she was ill; confirmed that she did communicate that fact to the State office; but did not recall whether she offered to reschedule the consultative exam.  (AR 38-39.)  Plaintiff was ill with the flu.  (AR 39.)

The ALJ asked about previous work as a daycare worker.  (AR 39.)  Plaintiff had a childcare business until December of 2003.  (AR 39.)  The business operated out of her home.  (Id.)  Plaintiff would generally watch two or three elementary school aged children.  (Id.)  Plaintiff would do things like homework assistance, transportation and field trips, and operated kind of like a before and after school program.  (AR 40.)  On occasion Plaintiff would have to lift a child that weighed around 50 pounds.  (AR 40.)  Plaintiff was primarily on her feet for this position.  (Id.)  Plaintiff did not have any employees, and did no training or supervision.  (AR 41-42.)

The ALJ then again asked about what limited Plaintiff from working, such as lifting, and Plaintiff answered her prolapse caused pressure in her rectum and vaginal area.  (AR 42.)  Due to

that, Plaintiff rarely lifts, she rests, puts her feet up, and uses the restroom many times per day. (Id.)  Plaintiff takes Tylenol for the pain.  (Id.)  Plaintiff testified she goes to the bathroom twenty times a day or roughly every 20 minutes,  and that she went four times while there for the hearing.  (AR 42-43.)  Plaintiff wears pads, and goes through about three pads per day.  (AR 43.) Plaintiff does not take any medication for her restroom problems.  (AR 43.)  Plaintiff does not carry extra clothes for restroom accidents, but stated she has accidents about once per week. (AR 43.)

Plaintiff has pain in both hands.  (AR 43-44.)  Plaintiff has shooting pains, it hurts when she writes, her knuckles hurt, the scar where she had surgery hurts, and her hands are always in pain.  (AR 44.)

Plaintiff has asthma, and has an inhaler and nebulizer.  (AR 44.)  Plaintiff uses the Discus daily, and the albuterol on occasion.  (Id.)

Plaintiff stated she has occasional depression.  (Id.)  When she gets depressed, she takes an herbal supplement that seems to help.  (Id.)

Plaintiff testified she does not have any problems dressing in the morning and does not have any problems bathing or taking a shower.  (AR 44-45.)  As for brushing teeth, combing her hair, washing her face, and other grooming, Plaintiff does not have "troubles per se," but these things take longer because of hand pain, especially when lifting up over her head.  (AR 45.) Plaintiff does not have any issues eating, handling utensils, or things like cups.  (Id.)  Plaintiff does need help with chores involving lifting, such as with laundry baskets, groceries, and anything that cause strain or weigh more than five (5) pounds.  (Id.)  Plaintiff can lift and carry a gallon of milk for a short time or distance.  (AR 45-46.)

Plaintiff cooks for herself, though has problems with chopping and standing.  (AR 46.)  If she stands too long she has to rest.  (Id.)  Due to varicose veins that throb and ache, Plaintiff can only stand for about twenty (20) minutes before needing to rest.  (Id.)  However, Plaintiff cannot sit for long either, also about a maximum of twenty (20) minutes.  (Id.)  If Plaintiff sits for too long, she experiences pain, aches, and her back hurts.  (Id.)  Plaintiff does not have any issues shopping or getting groceries or other items for herself.  (AR 47.)  Plaintiff does not have any

1  problems driving herself.  (Id.)

2       Plaintiff lives with her husband.  (Id.)  Plaintiff does not have any problems getting along

3  with him, or with other people generally.  (Id.)  Plaintiff does not have any problems with

4  supervisors or being supervised.  (Id.)  Plaintiff testified it is becoming more difficult for her to

5  concentrate, focus, and remember things.  (Id.)  For example, Plaintiff forgot a direction on the

6  way to the hearing.  (AR 48.)  Plaintiff does not have any problems remembering to take

7  medications.  (Id.)  Plaintiff does not have any problems following a GPS while driving.  (Id.)

8       Plaintiff was then examined by her counsel.  (Id.)  Plaintiff has problems with overhead

9  reaching due to carpal tunnel syndrome and her hands go numb.  (AR 49.)  Plaintiff denied

10 problems with reaching forward.  (Id.)  Plaintiff can use her hands for about twenty (20) minutes

11 before having to rest them, then has to rest them for about ten (10) minutes before using them

12 again.  (Id.)  Such periods of tiring and rest would increase or get worse if repeated throughout

13 the day.  (AR 49-50.)  Over an eight hour work day, Plaintiff testified she could use her hands

14 less than half of the day.  (AR 50.)

15      Plaintiff weighed 215 pounds on the day of the hearing.  (Id.)  The weight causes strain

16 on her body.  (Id.)  Plaintiff stated she was trying to lose weight.  (Id.)

17      For her restroom issues, Plaintiff takes about seven (7) minutes to use the restroom and

18 return when urinating.  (AR 50.)

19      Plaintiff uses her nebulizer about twice a month.  (AR 51.)  Plaintiff has problems with

20 things like smoke, dust, and fumes.  (Id.)  Plaintiff stated it helps that she no longer works at the

21 print shop as there was a lot of ink dust there.  (Id.)  Plaintiff has animals at home, but stated she

22 is very hygienic when it comes to making sure they are clean.  (Id.)

23      Plaintiff stated she still suffers from problems with her feet, such as bunions and

24 hammertoes.  (Id.)  Plaintiff has a bunion on her right foot that causes pain, she has to make sure

25 her shoes work with the bunion, and it contributes to her problems standing.  (AR 51-52.)

26      As for issues with her legs, Plaintiff had cellulitis, and now mainly it is her varicose

27 veins, which she wears compression socks for as recommended by a doctor.  (AR 52.)  Plaintiff

28 did not remember which doctor, but recalled it was a specialist relating to cellulitis.  (AR 52-53.)

1  Plaintiff was not wearing compression socks at the hearing.  (AR 53.)  Plaintiff elevates her legs

2  twice a day at the middle and end of the day, until the pain subsides or swelling goes down,

3  which takes about twenty (20) minutes.  (Id.)

4        Counsel then asked about polyps, and Plaintiff testified they no longer bother her and

5  have been fixed.  (Id.)  As for fibromyalgia, Plaintiff said "it was a thought that possibly with the

6  pain, but there was never an official diagnosis."  (Id.)

7        The VE was then examined by the ALJ.  (AR 55.)  Plaintiff's past work was classified as:

8  (1) print shop helper, medium, SVP 3; (2) child monitor, medium, SVP 3; and (3) sales clerk,

9  light, SVP 3, performed at medium.  (Id.)

10        The ALJ presented a hypothetical of same age, education, and vocational background,

11  with a medium exertional level, limited to frequent stooping, frequent handling and fingering

12  with upper extremities, no more than occasional exposure to pulmonary irritants, and the VE

13  testified such person could perform past work of sales clerk and child monitor.  (Id.)

14        The second hypothetical had the same restrictions at the light exertional level, and the VE

15  testified such person could perform past work of sales clerk as defined by the DOT, but not as it

16  was performed.  (AR 56.)  The third hypothetical was a light exertional level requiring a sit/stand

17  option, alternating every 30 minutes without time off task, and the VE testified such person

18  could not perform any past work.  (Id.)  The VE stated there was work available in the economy,

19  such as (1) information clerk, light, SVP 2; (2) office helper, light, SVP 2; and (3) mail clerk,

20  light, SVP 2.  (Id.)  The DOT does not cover sit/stand options, and the VE based such answer on

21  their experience and training.  (AR 56-57.)

22        Hypothetical four had the same restrictions but at the medium exertional level, and the

23  VE testified there would be no work for such person.  (AR 57.)  This is because the sit/stand

24  option does not work with the medium exertional level.  (Id.)

25        Hypothetical five had the same restrictions as hypothetical one, which is medium

26  exertional, no sit/stand option, but required ready access to the bathroom, with the person not

27  off-task more than 5% of the time, and the VE testified such person could perform the past work

28  of sales clerk.  (AR 58.)  Hypothetical six was presented with a light exertional level, with all the

1    restrictions including the sit/stand option, requiring access to the bathroom but not off-task more

2    than 5% of the time, and the VE testified there would be no past work, and the same available

3    work in the economy as hypothetical three.  (AR 59.)

4         Plaintiff's counsel then examined the VE.  (Id.)  The VE confirmed that the task of

5    stocking is part of a normal position as a sales clerk.  (AR 60.)  The VE testified such items to

6    restock could exceed twenty (20) pounds depending on nature of the product and store.

7         If hypothetical one could only use their hands occasionally for grasping and gripping, the

8    VE testified such person could not perform past work.  (Id.)  If hypothetical five were amended

9    to require one or two bathroom breaks each lasting about seven (7) minutes, there would be no

10   work available.  (AR 61.)

11   **C.    The ALJ's Findings of Fact and Conclusions of Law**

12        The ALJ made the following findings of fact and conclusions of law:

13   •  Plaintiff meets the insured status requirements of the Social Security Act through

14      December 31, 2020.

15   •  Plaintiff has not engaged in substantial gainful activity since the alleged onset date of

16      February 17, 2015.

17   •  Plaintiff has the following severe impairments: bilateral carpal tunnel syndrome,

18      lumbago, vaginal prolapse, rectocele, cystocele, fibromyalgia, obesity, and asthma.

19   •  Plaintiff does not have an impairment or combination of impairments that meets or

20      medically equals the severity of one of the listed impairments in 20 CFR Part 404,

21      Subpart P, Appendix 1.

22   •  Plaintiff had the residual functional capacity to perform medium work as defined in 20

23      CFR 404.1567(c), except that she is limited to frequent stooping; is limited to frequent

24      handling and fingering with the bilateral upper extremities; and can have no more than

25      occasional concentrated exposure to pulmonary irritants, such as dusts, gases, fumes, and

26      pollens.

27   •  Plaintiff is capable of performing past relevant work as a child monitor and sales clerk.

28      This work does not require the performance of work-related activities precluded by the

1    Plaintiff's residual functional capacity (20 CFR 404.1565).

2    • Plaintiff has not been under a disability, as defined in the Social Security Act, from

3    February 17, 2015, through the date of the decision February 21, 2019.

4    (AR 17-23.)

5    ### III.

6    ### LEGAL STANDARD

7    To qualify for disability insurance benefits under the Social Security Act, the claimant

8    must show that she is unable "to engage in any substantial gainful activity by reason of any

9    medically determinable physical or mental impairment which can be expected to result in death

10   or which has lasted or can be expected to last for a continuous period of not less than 12

11   months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step

12   sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. §

13   404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th

14   Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is

15   disabled are:

16   Step one: Is the claimant presently engaged in substantial gainful activity? If so,
17   the claimant is not disabled. If not, proceed to step two.

18   Step two: Is the claimant's alleged impairment sufficiently severe to limit his or
     her ability to work? If so, proceed to step three. If not, the claimant is not
19   disabled.

20   Step three: Does the claimant's impairment, or combination of impairments, meet
     or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the
21   claimant is disabled. If not, proceed to step four.

22   Step four: Does the claimant possess the residual functional capacity ("RFC") to
     perform his or her past relevant work? If so, the claimant is not disabled. If not,
23   proceed to step five.

24   Step five: Does the claimant's RFC, when considered with the claimant's age,
     education, and work experience, allow him or her to adjust to other work that
25   exists in significant numbers in the national economy? If so, the claimant is not
     disabled. If not, the claimant is disabled.

26   _____

27   [2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §
     404.1501 et seq., and Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The
28   regulations are generally the same for both types of benefits. Further references are to the disability insurance
     benefits regulations, 20 C.F.R. §404.1501 et seq.

1    Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

2    Congress has provided that an individual may obtain judicial review of any final decision
3    of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).
4    In reviewing findings of fact in respect to the denial of benefits, this court "reviews the
5    Commissioner's final decision for substantial evidence, and the Commissioner's decision will be
6    disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v.
7    Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a
8    scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)
9    (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which,
10   considering the record as a *whole*, a reasonable person might accept as adequate to support a
11   conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of
12   Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

13   "[A] reviewing court must consider the entire record as a whole and may not affirm
14   simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting
15   Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not
16   this Court's function to second guess the ALJ's conclusions and substitute the court's judgment
17   for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is
18   susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be
19   upheld.").

20                                        **IV.**

21                            **DISCUSSION AND ANALYSIS**

22   Plaintiff argues the ALJ erred by: (1) failing to provide any evidence to support the
23   Residual Functional Capacity ("RFC"); and (2) failing to provide clear and convincing reasons to
24   find the Plaintiff not credible.  (Pl.'s Opening Br. ("Br.") 7-17, ECF No. 20.)

25       **A.    Whether the ALJ Utilized Sufficient Evidence to Support the RFC
26              Determination**

27   Plaintiff submits that the ALJ failed to provide any evidence to support the RFC
28   determination; that since none of the medical opinions were given any weight, the ALJ

                                          9

1    improperly reviewed raw medical data and translated such into an RFC; and that if none of the

2    opinions were adequately supported, then the record was inadequate to allow for the RFC

3    determination to be properly made.  (Br. 7-11.)

4         Plaintiff emphasizes the special duty of the ALJ to develop the record, even when

5    represented by counsel, <u>Tonapetyan</u>, 242 F.3d at 1150,[3] to inquire and explore all relevant facts,

6    and that the Commissioner may develop the record by obtaining a consultative physical exam if

7    there is not sufficient medical evidence about an impairment, 20 C.F.R. § 404.1517.[4]  (Br. 7-8.)

8    Plaintiff directs the Court to the following facts: (1) the ALJ did not accept any of the medical

9    opinions when determining the RFC; (2) in December of 2017, a State agency physician opined

10   there was insufficient evidence to evaluate the claims (AR 67-68)[5]; (3) in March of 2018, a

11   subsequent State agency physician found Plaintiff's condition to be non-severe (AR 76)[6]; (4) the

12   ALJ rejected the State agency physician findings because subsequent evidence supported a

13   severe impairment finding for chronic pain, fibromyalgia, carpal tunnel, back impairments,

14   obesity, and asthma; and (5) the ALJ also rejected the opinion of Dr. Maud finding it not

15   supported by the record.[7]  (Br. 8.)

16

17   [3]  If "the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts."  <u>Tonapetyan</u>, 242 F.3d at 1150.

18   [4]  The regulation provides that: "If your medical sources cannot or will not give us sufficient medical evidence about
19   your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more
     physical or mental examinations or tests . . . If we arrange for the examination or test, we will give you reasonable
20   notice of the date, time, and place the examination or test will be given, and the name of the person or facility who
     will do it."  20 C.F.R. § 404.1517.

21   [5]  Doctor Jackson stated on December 11, 2017, that while Plaintiff alleged wrist pain, foot pain, neck pain, back
22   pain, and chronic pain, there were no descriptions of her physical findings; that although she also complained of
     pelvic pain due to rectal prolapse, she was noted on September 20, 2017 to have a cystocele and rectocele with
     normal pelvic muscle strength and tone; and noted that "we have no exams of the other musculoskeletal complaints
23   and the claimant has failed to attend the CE requested to complete this assessment.  Recommend IE."  (AR 67-68.)

24   [6]  Another State physician noted that Plaintiff failed to attend CE and that will need "IMCE," and wrote "Agree to
     Affirm IE."  (AR 76.)

25   [7]  The ALJ did "not find these opinions persuasive, as they are not supported by or consistent with the record."  (AR
26   20-21.)  The ALJ instead found there was evidence of severe impairments, noting: an April 19, 2016 exam indicated
     the Plaintiff had a positive Finkelstein's test and Phalen's test bilaterally, and had a tender lumbar spine with
27   decreased flexion, extension, and lateral bending; that an August 23, 2017 record contained diagnoses of pain in the
     left and right wrists, myalgia, cervicalgia, and lumbago with sciatica, right; that a November 24, 2017 record listed
     carpal tunnel syndrome as an active problem; that a January 23, 2017 record contained an assessment of
28   uncomplicated asthma; and a February 7, 2018 record contained an impression of fibromyalgia; and that there was

1   Plaintiff argues the ALJ's RFC determination must be supported by medical evidence,

2   "particularly the opinion of a treating or an examining physician."  (Br. 8-9, citing Penny v.

3   Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) ("There is no testimony in the record to refute Penny's

4   claim of disability.  The Secretary rested its case on the sole statement of Dr. Ross that Penny

5   could do sedentary work.  But, as indicated, we find this weak evidence because Dr. Ross had

6   never examined Penny.  Different people may be affected by similar injuries in different ways.

7   Different people have greater or lesser sensitivity to pain.  Without a personal medical evaluation

8   it is almost impossible to assess the residual functional capacity of any individual.").)  Plaintiff

9   proffers that because none of the medical opinions were given any weight, the ALJ must have

10  reviewed the raw medical data and translated such into functional limitations, and if none of the

11  opinions were adequately supported and were rejected by the ALJ, then the record was

12  inadequate to allow for proper evaluation of Plaintiff's RFC.  (Br. 10.)  Accordingly, Plaintiff

13  submits the ALJ had a duty to develop the record and obtain this information by requiring

14  Plaintiff to attend a consultative examination, and thus further erred by attempting to assess the

15  degree of impairment caused by Plaintiff's admitted conditions without the opinion of a

16  physician.

17  Defendant responds that the ALJ's RFC finding is supported by substantial evidence

18  overall, and that an RFC finding is not dependent on a doctor's medical opinion, but is instead an

19  administrative finding for the ALJ to make based on the record as a whole, 20 C.F.R. §

20  404.1546(c) ("the administrative law judge . . . is responsible for assessing your residual

21  functional capacity").  (Opp'n 8.)  Defendant emphasizes that it was Plaintiff that bore the

22  burden of establishing her medically determinable impairments imposed disabling limitations,

23  argues Plaintiff cannot satisfy the burden by simply pointing to her subjective complaints, and

24  notes Plaintiff did not actually contest the ALJ's evaluation of any of the medical opinion

25  evidence.  (Opp'n 9.)

26  / / /

27  _____

28  evidence of obesity given an August 23, 2017 record.  (AR 21.)  The ALJ however then found the record also
    indicated Plaintiff retained functional abilities for various reasons, as further discussed herein.  (AR 21.)

1.      Legal Standards

Plaintiff's arguments can be summarized or construed as: (1) the ALJ's residual functional capacity assessment is not supported by substantial evidence in the record; and (2) that the ALJ had a duty to further develop the record by ensuring a consultative exam was completed.

A claimant's RFC is "the most [the claimant] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).  The RFC is "based on all the relevant evidence in [the] case record."  20 C.F.R. § 416.945(a)(1).  "The ALJ must consider a claimant's physical and mental abilities, § 416.920(b) and (c), as well as the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain, § 416.920(e)."  Garrison v. Colvin, 759 F.3d 995, 1011 (9th Cir. 2014).  At step four the RFC is used to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work.  Garrison, 759 F.3d at 1011.  "In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record."  Thomas, 278 F.3d at 956.

When applying for disability benefits, the claimant has the duty to prove that she is disabled.  42 U.S.C. § 423(c)(5)(A).  The ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).  The ALJ has a duty to further develop the record where the evidence is ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence.  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy.  McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011).

2.      The Court Finds the ALJ's RFC Determination is Supported by Substantial Evidence in the Record and that the ALJ did not have a Duty to Further Develop the Record by Ordering a Consultative Exam

The Court now turns to the specific evidence in the record that Defendant argues the ALJ

1    properly relied upon, and that otherwise supports the ALJ's decision.

2        Defendant highlights the ALJ acknowledged that Plaintiff complained of pain in her

3    wrists, but contrary to Plaintiff's contention, the ALJ noted that Plaintiff exhibited full range of

4    motion in all her joints without pain or swelling.  (AR 20, 295, 313, 582, 586).  It appears

5    Defendant is referencing Plaintiff's argument that the "ALJ makes no findings or argument as to

6    why frequent handling and fingering is adopted despite Plaintiff's ongoing chronic pain in her

7    hands."  (Br. 10.)  The ALJ specifically acknowledged that Plaintiff had right carpal tunnel

8    release surgery on March 15, 2013; left carpal tunnel release surgery on April 23, 2014; that an

9    August 23, 2017 record diagnosed pain in the left and right wrists, myalgia, cervicalgia, and

10   lumbago with sciatica; and that a November 24, 2017 record listed carpal tunnel syndrome as an

11   active problem.  (AR 20.)  However, the ALJ then contrasted such with a September 24, 2018

12   record indicating that Plaintiff had "full range of motion of all her joints without pain or

13   swelling."  (AR 20, citing AR 582.)[8]  The ALJ also stated that exam findings suggested Plaintiff

14   retained functional abilities, including a December 14, 2015 exam that indicated Plaintiff "had

15   normal range of motion and gait, had an intact gross motor exam, and was in no acute distress."

16   (AR 20, citing AR 295.)[9]  The other record highlighted by Defendant was not specifically cited

17   by the ALJ, but does contain similar findings.  (AR 313)[10]

18       Defendant further highlights that examinations of Plaintiff's wrists were normal (AR 220,

19   224, 242, 254, 258, 482).  (Opp'n 9.)  The ALJ did specifically cite one of these records in the

20   opinion noting that the March 9, 2015 exam indicated Plaintiff had "normal exam findings of the

21   bilateral upper extremities."  (AR 20, citing AR 220.)  Specifically, this record reflected the

22   musculoskeletal exam showed normal wrists bilaterally, as well as normal shoulders, normal

23   elbows, with full strength in upper arms.  (AR 220.)  On this date, the chief complaint only noted

24   [8]  The ALJ's review was accurate, as the record states: "She notes full range of motion in all her joints without pain

25   or swelling."  (AR 582.)

26   [9]  On December 14, 2015, a physical exam did show Plaintiff's range of motion and gait was normal.  (AR 295.)

27   [10]  On February 24, 2015, Plaintiff exhibited normal range of motion on the musculoskeletal exam, no tenderness,
     but exhibited edema in legs.  (AR 313.)  The Court notes the other record cited by Defendant, AR 586, is a duplicate

28   of the September 24, 2018 record located at AR 582.

1    Plaintiff was "doing well . . . ready to make a drop in Suboxone" and that she was "working and

2    being active." (AR 219.)  The other records highlighted by Defendant were not specifically cited

3    by the ALJ though do provide additional support for normal wrist examinations.  However, such

4    records do contain complaints of wrist pain.[11]

5        Defendant accurately highlights that records appear to demonstrate Plaintiff also

6    repeatedly reported minimal pain with medication (AR 219 ("N/A" pain on March 9, 2015); 223

7    ("N/A" pain on May 5, 2015), 228 ("N/A" pain on August 11, 2015); 230 ("N/A" pain on

8    November 8, 2015); 233 ("N/A" pain on January 29, 2016); 237 ("N/A" pain on April 19, 2016),

9    241 ("N/A" pain on July 12, 2016); 245 ("N/A" pain on October 10, 2016); 249 (0/10 pain on

10   January 5, 2017); 253 (5/10 pain with medication and 8/10 without, on April 3, 2017); 257 (same

11   on May 30, 2017); 261 (0/10 pain on August 23, 2017); 468 (0/10 pain on November 21, 2017);

12   472 (0/10 pain on August 7, 2018); 476 (0/10 pain on May 6, 2018); 481 (0/10 pain on February

13   13, 2018)).

14       The Court's review does not make it clear why there is an "N/A" on some of these dates.

15   ───────────────
     [11]  On May 5, 2015, the musculoskeletal exam again showed normal wrists and other parts of the arms.  (AR 224.)

16   However, the chief complaint was noted as presenting with "hand pain."  (AR 223.)  Medication was noted as
     working quite well to control pain, and Plaintiff was noted as able to perform some house or yardwork, self-care,

17   and able to drive.  (AR 223. )  Plaintiff was diagnosed with opioid dependence.  (AR 224.)

18   On July 12, 2016, the exam again found normal wrists.  (AR 242.)  The record did note Plaintiff "presented with
     finger and hand pain . . . exacerbated by activity."  (AR 241.)  However, it was noted the "complaint does not limit

19   activities."  (AR 241)  It could be error, but the record also stated she presented with a pain scale of 0/10 both with
     medication, and also 0/10 without medication.  (AR 241.)  The record indicated Plaintiff could perform activities of

20   daily living including cooking, laundry, gardening, shopping, bathing, dressing, medication management, driving,
     brushing teeth, and self-toileting.  (AR 242.)  Diagnosis was pain in right wrist, and pain in left wrist, and Plaintiff

21   was instructed to continue with opiate analgesic at present dosage, and noted she was stable.  (AR 243.)

22   On April 3, 2017, the musculoskeletal exam showed normal wrists.  (AR 254.)  However, the chief complaint was
     presenting with wrist pain bilaterally, described as aching, episodes occurring in the morning, symptoms worse

23   during the day, and frequency was daily.  (AR 253.)  Pain with medication was noted as 5/10 with, and 8/10 without
     medication.  (AR 253.)  Plaintiff was noted as able to perform activities of daily living including cooking, laundry,

24   gardening, shopping, bathing, dressing, medication management, driving, brushing teeth, and self-toileting.  (AR
     254.)  On May 30, 2017, the record was essentially identical as the April 3, 2017 record.  (AR 254, 258.)

25   On February 13, 2018, the musculoskeletal exam showed normal wrists.  (AR 482.)  However, the chief complaint

26   was wrist pain bilaterally, described as aching, episodes occurring in the morning, symptoms worse during the day,
     and frequency described as daily.  (AR 481.)  Pain with medication was noted as 0/10, and 8/10 without medication.

27   (AR 481.)  It was noted that the other chief complaint was chronic pain and opioid dependence, that Plaintiff had
     been on Suboxone "which cares for her pain and takes care of her opioid dependence."  (AR 481.)  Treatment plan

28   was noted as continuing on same dosage, and that Plaintiff was "currently unemployable."  (AR 484.)  A different
     record from this date was cited by the ALJ, not for normal wrists, but for the fact that Plaintiff presented with
     normal gait and stance, and had clear lungs to auscultation bilaterally.  (AR 20-21, citing AR 520.)

For example, on October 10, 2016, while there is an "N/A" entered, the record also Plaintiff continued with pain in the neck back, and wrists, and also noted medications were helpful. (AR 245.) It also appears to the Court that some of the records with "0" entered may be incomplete or inaccurate. For example, in the January 5, 2017, August 23, 2017, and November 21, 2017 records, Plaintiff reported daily aching wrist pain aching, though the record also indicated pain levels of 0 out 10 both with and without medication. (AR 249, 261, 468.) Further, at least one of the records does specifically state that Plaintiff "presented with pain scale of 0/10 with medication," while containing the "N/A" in the pain categories. (AR 237 (April 19, 2016).) On July 12, 2016, Plaintiff presented with 0/10 on pain scale both with and without medication, while the "N/A" was entered into the other pain section. (AR 241.) Nonetheless, on February 13, 2018, August 7, 2018, and May 6, 2018, while reporting wrist pain, pain was noted to be 0 with medication, and 8 or 10 without, thus indicating at least some of these pain matrixes were sufficiently based on reports given this specificity and variation between the records. (AR 476, 472, 481.) The Court does not depend heavily on these records concerning pain reporting as the ALJ did not specifically depend on any of the pain scale notations within the opinion. However, the ALJ did aver to records pertaining to lack of acute distress, no flank pain, and the ALJ did cite to the September 24, 2018 record for its indication that Plaintiff had full range of motion with her joints without pain. (AR 20-21.) Thus, the overall tenor of these records support the ALJ's opinion in that regard.

The ALJ acknowledged that a January 23, 2017 record contained an assessment of uncomplicated asthma, and a February 7, 2018 record contained an impression of fibromyalgia, however, contrasted such with the September 24, 2018 exam that indicated Plaintiff had no difficulty breathing and was in no acute distress. (AR 20, citing AR 582.) Defendant directs the Court further to records wherein Plaintiff denied shortness of breath, and respiratory examinations were repeatedly normal, (AR 270, 279, 285, 293-94, 303, 311, 313, 323, 326, 327, 344, 431-32, 435-36, 440-41, 582, 586).[12] Defendant emphasizes that Plaintiff even denied

---

[12] On September 20, 2017, a respiratory review reported no wheezing or coughing, and exam showed no difficulty breathing. (AR 270.) On July 11, 2016, a respiratory exam showed no difficulty breathing. (AR 279.) On April

1  asthma at times (AR 234, 250, 254, 258, 262, 469, 473, 477, 482, 487).[13]

2      The ALJ further noted a September 24, 2018 record wherein Plaintiff denied any urinary

3  urgency, frequency, or burning, and had no flank pain in relation to her pelvic pain and genital

4  prolapse.  (AR 20, citing AR 582.)  Defendant directs the Court to other records where Plaintiff

5  similarly denied such symptoms.  (AR 20, 270, 431, 435, 440.)  The ALJ noted that Plaintiff had

6  normal pelvic muscle strength and tone, and normal pelvic sensation and reflexes.  (AR 20,

7  citing AR 582.)  Defendant also directs the Court to similar records (AR 270, 279, 303, 344, 432,

8  436, 441, 582. 586), in addition to records wherein Plaintiff denied any urinary symptoms (AR

9  299, 327, 499, 503, 566, 569).[14]

10     Finally, Defendant also directs the Court to records wherein Plaintiff presented during

11  examinations as well nourished, well developed, and in no acute distress, and was repeatedly

12  described as "healthy appearing" (AR 228, 246, 250, 258, 262, 270, 272, 279, 292, 295, 303,

13  307, 309, 313, 323, 332, 339, 341, 344, 432, 436); to records where Plaintiff had normal gait

14  (AR 228, 231, 276, 295, 520, 524), and normal muscle strength and tone in her upper and lower

15

16  27, 2016, the record was negative for shortness of breath or wheezing, and exam showed clear lungs.  (AR 285.)  On
17  December 14, 2015, Plaintiff reported no cough or wheezing, no muscle aches or joint pains, lungs on exam were
    clear bilaterally with good inspiratory effort, no wheezes/rales/rhonchi; and range of motion and gait are normal on
18  musculoskeletal exam.  (AR 293-295.)  On July 6, 2015, the exam showed no difficulty breathing.  (AR 303.)  On
    February 24, 2015, a review of symptoms for respiratory were negative for cough, chest tightness, and shortness of
19  breath.  (AR 311.)  Effort was normal and breath sounds normal, there was no respiratory distress, and no wheezes
    (AR 313).  On February 17, 2015, the respiratory exam showed no difficulty breathing.  (AR 323.)  On February 10,
20  2015, Plaintiff denied difficulty climbing two flights of stairs due to trouble breathing or fatigue, and denied
    difficulty walking four blocks due to trouble breathing, and denied shortness of breath.  (AR 326.)  On September
21  20, 2017, Plaintiff denied shortness of breath, and the physical exam showed no difficulty breathing.  (AR 431-432,
    435-36, 440-41.)  On September 24, 2018, Plaintiff had no shortness of breath, no wheezing or coughing.  (AR 582.)

22  [13]  On January 29, 2016, Plaintiff denied asthma and breathing sounds were clear bilaterally.  (AR 234.)  On January
23  5, 2017, Plaintiff denied asthma and had normal respiratory exam with clear breath sounds.  (AR 250.)  On April 3,
    2017, Plaintiff denied asthma and had normal respiratory exam with clear breath sounds bilaterally.  (AR 254.)

24  [14]  The Court notes that within the record dated September 24, 2018, cited by the ALJ, the Plaintiff did also
25  complaint that she still had symptoms of prolapse and some urinary incontinence, that she has to double void, and
    that she also feels like she can't empty her bowels completely   (AR 583.)   Nonetheless, the record's other
26  components were accurately reported by the ALJ.  Similarly the September 20, 2017 record, cited by the Defendant
    but not the ALJ, reflects Plaintiff reporting for an annual exam and follow up on rectal prolapse.  (AR 268.)
    Therein, Plaintiff reported "worsening symptoms related to her prolapse since last visit.  She feels greater pressure.
27  She also has developed some pelvic and lower back pain in the most recent weeks."  (AR 268.)  Pelvic muscle
    strength and tone on exam was normal and symmetrical, and neurological exam showed normal pelvic sensation and
28  reflexes.  (AR 270.)

1    extremities (AR 220, 224, 234, 238, 242, 250).  The Court has reviewed these records, and while

2    not specifically cited by the ALJ, do provide additional support for the ALJ's citation of the

3    September 24, 2018 record reflecting no acute distress and Plaintiff's healthy appearance (AR

4    20, citing AR 582); the ALJ's citation of the March 9, 2015 record indicating normal exam

5    findings of the bilateral upper extremities (AR 20, citing AR 219-220); the citation of the

6    December 14, 2015 record indicating Plaintiff had normal range of motion and gait, and was in

7    no acute distress (AR 20 citing AR 295); and citation of the February 13, 2018 record indicating

8    that Plaintiff had normal gait (AR 20, citing AR 520).

9         The Court finds the ALJ's RFC determination to be proper, reasonable, based on

10   substantial evidence in the record, and not deficient due to lack of use of a medical opinion.  See

11   Brown v. Berryhill, 697 F. App'x 548, (Mem)–549 (9th Cir. 2017) ("The ALJ's determination

12   that Brown was not disabled due to carpal tunnel syndrome and inclusion of a limitation of

13   'frequent handl[ing]' in the RFC also are  supported by substantial evidence.  The existence of

14   Brown's carpal tunnel syndrome alone is insufficient to establish functional limitations or

15   disability . . . the records of Brown's treating physician indicate that Brown had normal strength

16   and full mobility of his hands and fingers both before and after his carpal tunnel release surgery.

17   Because the record evidence was not ambiguous and the record was sufficient to allow for proper

18   evaluation of the evidence, the ALJ was not required to re-contact Brown's doctors or further

19   develop the record.").

20        The Court agrees with Defendant that Plaintiff has not provided any legal authority

21   requiring an ALJ to rely on a single medical source opinion to determine the RFC, and that the

22   ALJ was not required to adopt the findings or opinion of any of the physicians but rather was

23   required to determine the RFC based on all of the evidence in the record.  See 20 C.F.R. §

24   404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as . . .

25   your residual functional capacity . . . the final responsibility for deciding these issues is reserved

26   to the Commissioner."); Rounds v. Comm'r of Soc. Sec., 807 F.3d 996, 1006 (9th Cir. 2015)

27   ("the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC");

28   Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of

the ALJ, not the claimant's physician, to determine residual functional capacity.").  Significantly, the regulations provide the following guidance for utilizing evidence in assessing an RFC, and allows for ordering a consultative exam "if necessary":

> (3) Evidence we use to assess your residual functional capacity. We will assess your residual functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity.   (See § 404.1512(c).) However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources.

20 C.F.R. § 404.1545(a)(3).  As for SSR 96-8p, Defendant contends Plaintiff improperly relies on the ruling.  The ruling provides that the "RFC assessment must be based on *all* of the relevant evidence in the case record, such as": medical history; medical signs and laboratory findings; the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication); the reports of daily activities; lay evidence; recorded observations; medical source statements; effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment, and work evaluations, if available.  Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

Based on the applicable caselaw and regulations before the Court, the Court cannot find any discernible error due the fact the ALJ did not reschedule or reorder another consultative exam after the Plaintiff failed to appear for the initial exam, did not make any apparent effort to reschedule such exam, and Plaintiff's counsel did not raise any issue with such failure to appear or need to reschedule despite the ALJ specifically questioning Plaintiff at the hearing as to why Plaintiff did not appear for the consultative exam.  See Karen E. v. Berryhill, No. ED CV 17-918-SP, 2019 WL 1405835, at *3 (C.D. Cal. Mar. 27, 2019) ("Certainly it may have been helpful for the ALJ to retain a medical expert to review these records, but it was not necessarily required where, as here, the ALJ reviewed the substantial medical evidence that supported his RFC

determination with respect to plaintiff's lower back pain."); <u>Breen v. Callahan</u>, No. C 97-1389 CRB, 1998 WL 272998, at *3-4 (N.D. Cal. May 22, 1998) ("If the ALJ's obligation to develop the record is thus raised, the ALJ can fulfill his obligation by making a reasonable attempt to obtain medical evidence from the claimant's treating sources, or by ordering a consultative examination when the medical evidence is incomplete or unclear and undermines the ability of the ALJ to resolve the issue of disability . . . The decision to order a consultative examination is, however, discretionary . . . and is only required when the record establishes that such an examination is necessary to enable the ALJ to resolve the issue of disability . . .  As an ALJ is not required to order a consultative examination solely on the basis of a plaintiff's allegations unsupported by objective medical evidence . . . it follows that neither is an ALJ required to order an exam simply because a physician recommends an exam on the basis of such allegations alone."); <u>Henderson v. Astrue</u>, No. ED CV 08-01904-SH, 2009 WL 3074398, at *6 (C.D. Cal. Sept. 23, 2009) ("Upon reconsideration of her application, another consultative exam was scheduled, but Plaintiff did not attend either of the two appointments made by SSA on her behalf . . . The ALJ properly considered Dr. Nguyen's opinion and resolved any minor conflicts in the evidence on record.  There was not a duty to order another consultative exam or develop the record further.").

The Court agrees with Defendant that Plaintiff is attempting to shift the burden to prove disability.  20 C.F.R. § 404.1512(a)(1) (""In general, you have to prove to us that you are . . . disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled (see § 404.1513). This duty is ongoing and requires you to disclose any additional related evidence about which you become aware."[15]; <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the burden is on the claimant to establish her entitlement to disability insurance benefits."), <u>as amended</u> (Jan. 26, 1999); <u>Leitner v. Comm'r Soc. Sec. Admin.</u>, 361 F. App'x 876, 877 (9th Cir. 2010) ("There was no error.  Nothing indicates that the ALJ should have ordered a consultative exam to assess Ms. Leitner's

---

[15]  Defendant cites to 20 C.F.R. § 404.1512(c), however, this provision no longer has a subsection (c).

depression and anxiety.  The claimant bears the burden to show that her impairment or their symptoms affect her ability to perform basic work activities . . . On this record, the ALJ could properly determine that Leitner's depression was not severe. Her lack of counseling, the lack of a recommendation for counseling, her lack of hospitalization, and her voluntary discontinuance of her medication were factors that could properly be considered . . . The ALJ's duty to develop the record is triggered if there is ambiguous evidence or the record is inadequate for proper evaluation of evidence.  Neither is true here.") (internal citations and quotation marks omitted); Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence . . . The record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence.  Substantial evidence supported the ALJ's decision that Mayes was not disabled.") (internal citation omitted).

The facts in this case are not similar to other instances in which the ALJ was found to have a duty to further develop the record.  See Tonapetyan, 242 F.3d at 1150-51 (ALJ erred by relying on testimony of physician who indicated more information was needed to make diagnosis); McLeod, 640 F.3d at 887 (ALJ erred by failing to obtain disability determination from the Veteran's Administration); Bonner v. Astrue, 725 F.Supp.2d 898, 901-902 (C.D. Cal. 2010) (ALJ erred where failed to determine if claimant's benefits were property terminated or should have been resumed after his release from prison); Hilliard v. Barnhart, 442 F.Supp.2d 813, 818-19 (N.D. Cal. 2006) (ALJ erred by failing to develop record where he relied on the opinion of a physician who recognized he did not have sufficient information to make a diagnosis).  While the state agency physicians did recommend a consultative exam, Plaintiff failed to appear for such.  Thereafter, the ALJ did not rely on the findings of these state agency physicians, but rather assigned weight to Plaintiff's physicians and the state agency physicians according to the evidence in the record.  Plaintiff did not actually specifically challenge the ALJ's evaluation or weight given to the medical opinion evidence.  Nor did Plaintiff file a reply brief addressing the Defendant's arguments concerning the applicable case law and regulations, and the evidence that the ALJ cited in the record to make the RFC determination, and the

1 evidcne in the record that the ALJ did not specifically cite but provides support for the use of

2 records actually cited by the ALJ and demonstrates the records cited by the ALJ are consistent

3 with the longitudinal record as a whole.

4     The Court finds the ALJ's RFC assessment to be based on substantial evidence in the

5 record, and Plaintiff has not demonstrated that the ALJ erred by failing to further develop the

6 record.

7     **B.**     **Whether the ALJ Provided Clear and Convincing Reasons to Reject**

8         **Plaintiff's Testimony**

9     Plaintiff argues the ALJ failed to provide clear and convincing reasons for rejecting her

10 testimony.

11     1.    The Clear and Convincing Standard for Weighing Credibility[16]

12     "An ALJ is not required to believe every allegation of disabling pain or other non-

13 exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation

14 and citations omitted). Determining whether a claimant's testimony regarding subjective pain or

15 symptoms is credible requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674

16 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented

17 objective medical evidence of an underlying impairment which could reasonably be expected to

18 produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th

19 Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to

20 show that her impairment could be expected to cause the severity of the symptoms that are

21 alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80

22 F.3d at 1282.

23     Second, if the first test is met and there is no evidence of malingering, the ALJ can only

24 reject the claimant's testimony regarding the severity of her symptoms by offering "clear and

25 convincing reasons" for the adverse credibility finding. Carmickle v. Commissioner of Social

26

27 [16]   The Commissioner "maintains that this standard is inconsistent with the deferential substantial evidence"
standard, but "acknowledges that the clear and convincing standard is part of this Circuit's law," and argues the
28 ALJ's reasons suffice under any standard. (Opp'n 13 n.3.)

1   Security, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must make findings that support this

2   conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude

3   the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit

4   the claimant's testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

5          Factors that may be considered in assessing a claimant's subjective pain and symptom

6   testimony include the claimant's daily activities; the location, duration, intensity and frequency

7   of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage,

8   effectiveness or side effects of any medication; other measures or treatment used for relief;

9   functional restrictions; and other relevant factors.  Lingenfelter, 504 F.3d at 1040; Thomas, 278

10  F.3d at 958.  In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary

11  techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent

12  statements concerning the symptoms, and other testimony by the claimant that appears less than

13  candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a

14  prescribed course of treatment."  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)

15  (quoting Smolen, 80 F.3d at 1284).

16         2.      The Parties' Arguments

17         a.      **Plaintiff's Challenges**

18         Plaintiff correctly proffers that the ALJ may not reject pain testimony based on objective

19  evidence alone.  (Br. 12-13.)  Plaintiff argues that because the ALJ acknowledged in reviewing

20  the record that Plaintiff suffered from bilateral carpal tunnel syndrome, lumbago, vaginal

21  prolapse, rectocele, cystocele, fibromyalgia, obesity, and asthma (AR 20-21), objective medical

22  evidence was thus presented that showed evidence of an underlying impairment, and the ALJ

23  was not allowed to reject the testimony pain only on this reasoning.  (Br. 13.)  While the ALJ

24  repeatedly stated that because Plaintiff "retained some functional abilities" the testimony was

25  undercut (AR 20-22), Plaintiff argues the ALJ cannot simply recite the record showing some

26  benign findings to negate the severe findings in the record or Plaintiff's complaints of pain

27  without clearly identifying how these records conflict with specific testimonial statements made

28  by Plaintiff.  (Br. 13, citing White v. Colvin, No. EDCV 14-2592-AS, 2015 WL 8769978, at *4

1  (C.D. Cal. Dec. 14, 2015) ("The ALJ's opinion does not explicitly identify the ALJ's reasons for

2  discrediting Plaintiff's testimony . . . the Court cannot affirm an ALJ's decision based upon

3  inconsistencies in testimony or medical evidence that the ALJ did not specifically identify in

4  support of his decision.").).

5      Plaintiff also argues that the ALJ failed to explain how and which daily activities

6  conflicted with specific testimony, and specifically how any self-care activities that Plaintiff

7  performed undermined her symptom testimony.  (Br. 14-15.)  Plaintiff emphasizes that a blanket

8  statement from an ALJ that daily activities are inconsistent does not satisfy the clear and

9  convincing standard, and that further, daily activities such as cooking, doing laundry, gardening,

10  shopping, driving and managing personal hygiene do not mean a person is not disabled.  (Br. 15,

11  citing Vertigan, 260 F.3d at 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the

12  mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving

13  a car, or limited walking for exercise, does not in any way detract from her credibility as to her

14  overall disability [as] [o]ne does not need to be 'utterly incapacitated' in order to be disabled

15  [and] activities such as walking in the mall and swimming are not necessarily transferable to the

16  work setting with regard to the impact of pain.").).  Plaintiff contends that no analysis was made

17  by the ALJ that explains how these activities conflict with the Plaintiff's statements regarding

18  her functional abilities, as Plaintiff emphasizes she never claimed to be completely devoid of

19  functional abilities, but merely talked about difficulty in performing such tasks, and of her need

20  to rest periodically and constant need to use the restroom throughout the day (AR 42-54).  (Br.

21  15-16, citing Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("disability claimants should

22  not be penalized for attempting to lead normal lives in the face of their limitations . . . Only if the

23  level of activity were inconsistent with Claimant's claimed limitations would these activities

24  have any bearing on Claimant's credibility.").).

25      Plaintiff further argues that while the ALJ claimed that there was conflict between

26  Plaintiff's activities and her contentions regarding her ability to sit, stand, use her hands, and

27  other functions, there was no explanation of how they actually conflicted.  (Br. 16, citing Brown-

28  Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015) (finding the ALJ "did not specifically

1   identify any such inconsistencies; she simply stated her non-credibility conclusion and then

2   summarized the medical evidence supporting her RFC determination.").)  Further, even if

3   conflicts could be read into the summarization of Plaintiff's activities, they would be post-hoc

4   findings that cannot be used to affirm.   (Br. 16, citing Brown-Hunter v. Colvin, 806 F.3d 487,

5   494 (9th Cir. 2015) ("Although the inconsistencies identified by the district court could be

6   reasonable inferences drawn from the ALJ's summary of the evidence, the credibility

7   determination is exclusively the ALJ's to make, and ours only to review . . . the inconsistencies

8   identified independently by the district court cannot provide the basis upon which we can affirm

9   the ALJ's decision.").   Plaintiff submits that "there was no other evidence in the record

10  suggesting the Plaintiff engaged in any activity on a sustained basis commiserate with an 8 hour,

11  5 day a week job . . . [and it] is particularly true in a case such as this, where Plaintiff had to rest

12  and repeatedly toilet throughout the day to complete these tasks."  (Br. 17.)

13         **b.      Defendant's Response**

14         Defendant first submits that the ALJ properly found the objective evidence did not

15  corroborate claims of disabling symptoms, though acknowledges this cannot be the sole ground.

16  Specifically, while Plaintiff complained of disabling exertional and manipulative limitations,

17  physical exams revealed few supportive objective findings, and as summarized and discussed

18  above in Section IV(A), supra, Plaintiff had full range of motion, normal wrists on examination,

19  little complaints of pain, no complaints of shortness of breath, normal respiratory exams, normal

20  gait, normal muscle strength and tone, and no urinary urgency, frequency or burning.  (Opp'n

21  14.)

22         As for daily activities, Defendant responds that the ALJ reasonably determined Plaintiff's

23  allegations about being largely unable to sit, stand, lift, reach or use both hands, were in conflict

24  with her admissions about daily activities.  (Opp'n 14.)  As the ALJ noted, Plaintiff cooked, did

25  laundry, gardened, shopped, bathed, drove a car, brushed her teeth, and performed self-toileting

26  (AR 20, 250), and Defendant emphasizes that Plaintiff repeatedly admitted engaging in these

27  activities throughout the record (AR 223, 227, 230-31, 234, 238, 242, 246, 254, 258, 262, 469,

28  473, 477, 482, 487).  (Opp'n 14.)  Defendant argues that while Plaintiff argues she never claimed

to be completely devoid of functional abilities, she did testify at the hearing that she was limited

from lifting more than five pounds, to standing for twenty minutes, sitting for twenty minutes,

and using her hands for twenty minutes at a time, and these alleged limitations are in fact

inconsistent with the activities identified (AR 45-46, 49-50).  (Opp'n 15.)

> 3.    The Court finds the ALJ Provided Clear and Convincing Reasons to Discount Plaintiff's Testimony

As acknowledged by the parties, the ALJ made the credibility determination based on: (1)

a lack of objective evidence to support the pain testimony; and (2) the reported activities of daily

living.  (AR 19-20.)

> a.    The ALJ's Opinion and Records Cited Therein

In discounting the symptom testimony, the ALJ first specifically acknowledged that

Plaintiff reported pelvic organ prolapse, carpal tunnel syndrome, and cellulitis,[17] limited her

ability to work (AR 178),[18] and that Plaintiff testified at the hearing that she experienced pain,

frequent need to use the bathroom, and used a nebulizer.  (AR 19.)  The ALJ then stated that in

consideration of the evidence, the impairments could be expected to cause the alleged symptoms,

but found Plaintiff's statements concerning the intensity, persistence and limiting effects of the

symptoms "were not entirely consistent with the medical evidence and other evidence in the

record."  (AR 19.)  While this is a largely generic statement often made in ALJ opinions, the ALJ

then went on to address the specific conditions and the records that the ALJ found in conflict

with such conditions.

In the credibility analysis, as to carpal tunnel syndrome, the ALJ acknowledged that

Plaintiff had right carpal tunnel release surgery on March 15, 2013; left carpal tunnel release

surgery on April 23, 2014; that an August 23, 2017 record diagnosed pain in the left and right

wrists, myalgia, cervicalgia, and lumbago with sciatica; and that a November 24, 2017 record

---

[17] Cellulitis is the "[i]nflammation of cellular or connective tissue."  Barney v. Astrue, No. ED CV 09-1733 JCG, 2010 WL 2889488, at *5 (C.D. Cal. July 20, 2010) (quoting *Stedman's Medical Dictionary* 307 (26th ed.1995)).

[18]  In the Disability Report, Form SSA 3368, dated September 20, 2017, where asked to list all of the physical and mental conditions that limit her ability to work, Plaintiff listed only these three conditions.  (AR 178.)

listed carpal tunnel syndrome as an active problem.  (AR 20.)  However, the ALJ noted a September 24, 2018 record indicated that Plaintiff had full range of motion with all of her joints without pain or swelling.  (AR 20, citing AR 582.)[19]

The ALJ then acknowledged that a January 23, 2017 record contained an assessment of uncomplicated asthma, and a February 7, 2018 record contained an impression of fibromyalgia (Ex. 2F at 12; 8F at 2), however, contrasted such again with the September 24, 2018 exam that indicated Plaintiff had no difficulty breathing and was in no acute distress.  (AR 20, citing AR 582.)

The ALJ then acknowledged a September 20, 2017 record assessed pelvic pain, female genital prolapse, rectocele, and cystocele.  (AR 20.)  However, the ALJ again contrasted those findings with the September 24, 2018 exam, noting the record indicated Plaintiff: had normal pelvic sensation and reflexes; had normal pelvic muscle strength and tone; was healthy appearing in no acute distress; and stated that Plaintiff denied any urinary urgency, frequency, burning, or flank pain.  (AR 20, citing AR 582.)  As noted by the Court, these aspects of the record as described by the ALJ are accurate, however, the record did demonstrate Plaintiff presented with a complaint of urinary incontinence and other symptoms of her prolapse.  (AR 583.)

While these three comparisons by the ALJ only cited the September 24, 2018 record, the ALJ also continued within the credibility analysis section to state that "other exam findings and records also suggest that [Plaintiff] retained functional abilities."  (AR 20.)  The ALJ cited a March 9, 2015 exam, noting that it indicated Plaintiff "had clear breath sounds bilaterally, had no abdominal tenderness, and had normal exam findings of the bilateral upper extremities."  (AR 20, citing AR 220.)[20]  The ALJ cited a December 14, 2015 exam, noting that it indicated that

---

[19] On September 24, 2018, Plaintiff denied shortness of breath; denied any urinary urgency, frequency, or burning; presented with full range of motion of all her joints without pain or swelling; the exam noted she was healthy appearing, had no acute distress, was alert and oriented in normal mood; the exam noted no difficulty breathing; the exam noted pelvic muscle strength and tone normal and symmetrical; and noted normal pelvic sensation and reflexes.  (AR 582.)  However, the record also shows Plaintiff presented at the annual exam stating she still had symptoms of prolapse and some urinary incontinence, that she has to double void, and that she also feels like she can't empty her bowels completely.  (AR 583.)

[20]  On March 9, 2015, the musculoskeletal exam noted normal wrists bilaterally; had no abdominal tenderness and normal bowel sounds; had clear breath sounds bilaterally; and stated Plaintiff was "doing well . . . ready to make a

1  Plaintiff "had normal range of motion and gait, had an intact gross motor exam, and was in no

2  acute distress."  (AR 20, citing AR 295.)[21]  The ALJ additionally cited a February 13, 2018

3  exam, noting that it indicated Plaintiff "had normal gait and stance and had clear lungs to

4  auscultation bilaterally."  (AR 20, citing AR 520.)[22]

5  Finally, within the credibility portion of the ALJ's opinion, the ALJ then found that

6  Plaintiff's "reported activities also suggest that she retained functional abilities.  For example, a

7  January 5, 2017 record indicated that [Plaintiff] is able to cook, do laundry, garden, shop, bathe,

8  dress, drive, brush her teeth, and perform self-toileting."  (AR 20, citing AR 250.)[23]

9  **b.     The ALJ's use of the Objective Medical Evidence was Proper**

10  While a lack of objective medical evidence cannot form the sole basis for an ALJ to

11  reject pain testimony, it is a proper factor the ALJ may consider in weighing a claimant's

12  testimony.  See Vertigan, 260 F.3d at 1049 ("The fact that a claimant's testimony is not fully

13  corroborated by the objective medical findings, in and of itself, is not a clear and convincing

14  reason for rejecting it."); Burch, 400 F.3d at 680-81 ("Although lack of medical evidence cannot

15  form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his

16  credibility analysis."); 20 C.F.R. § 404.1529 ("We will not reject your statements about the

17  intensity and persistence of your pain or other symptoms or about the effect your symptoms have

18  on your ability to work solely because the available objective medical evidence does not

19  substantiate your statements.")

20  The Court's review of the records cited by the ALJ in the credibility section shows the

21  citations and descriptions to be substantially accurate.  (AR 20, citing AR 220, 295, 520, 582.)

22

23  drop in Suboxone" and that she was "working and being active."  (AR 219-20.)

24  [21]  On December 14, 2015, the exam reflected Plaintiff had normal range of motion and gait, was in no acute distress, and gross motor was intact.  (AR 295.)

25
26  [22]  On February 13, 2018, Plaintiff presented on exam with normal gait and stance, and had clear lungs bilaterally with good air movement without wheezing or rhonchi.  (AR 520.)

27  [23]  The January 5, 2017 record does reflect that under the heading "Patient History" and subheading "Activities of Daily Living," Plaintiff answered or affirmed an ability to (1) cook; (2) do laundry; (3) garden; (4) shop; (5) bathe;

28  (6) dress; (7) manage medication; (8) drive; (9) brush her teeth; and (10) self toilet.  (AR 250.)

As already reviewed and discussed above in Section IV(A), supra, while not cited by the ALJ, the Defendant has highlighted numerous records within the record that are consistently uniform in their similarity to the records that the ALJ did use as representative examples within the ALJ's opinion.  While the Court cannot properly conclude the ALJ's decision is proper on records or a rationale that was not stated by the ALJ, Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003), the records highlighted by Defendant do support the ALJ's use of the records that were cited, provide further evidentiary support for the reasons that were proffered by the ALJ, and at the very least, assure the Court that the ALJ was not cherry-picking isolated examples or records that were irregular or not representative of the longitudinal record as a whole.  See Hernandez v. Astrue, No. ED CV 12-0209 FMO, 2013 WL 436168, at *3 (C.D. Cal. Feb. 4, 2013) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence [and the] court must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.") (internal quotation marks and citations omitted).

Accordingly, the Court finds the ALJ's summary and utilization of the records above is accurate and supported by substantial evidence.  Plaintiff has not sufficiently demonstrated the ALJ's summary or analysis of the objective medical records as discussed here was improper.  Nor has Plaintiff presented sufficient evidence of objective medical records that would counter Defendant's arguments that the ALJ sufficiently relied in part on the objective medical records in discounting the symptom testimony.  Plaintiff did not file any reply brief specifically refuting the Defendant's presentation or arguments regarding the ALJ's use of the records here.

The ALJ's specific use of the objective medical records to contrast the inconsistency with the Plaintiff's testimony, was proper, reasonable, and supported by substantial evidence.  While the ALJ's use of the objective medical evidence is insufficient standing alone, the ALJ provided clear and convincing determinations when considered in conjunction with the ALJ's other reasoning concerning daily activities, which the Court discusses in the next subsection.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony

1   cannot be rejected on the sole ground that it is not fully corroborated by objective medical

2   evidence, the medical evidence is still a relevant factor in determining the severity of the

3   claimant's pain and its disabling effects . . . The ALJ also pointed out ways in which Rollins'

4   claim to have totally disabling pain was undermined by her own testimony about her daily

5   activities, such as attending to the needs of her two young children, cooking, housekeeping,

6   laundry, shopping, attending therapy and various other meetings every week, and so forth.")

7   (citing 20 C.F.R. § 404.1529(c)(2)); Vertigan, 260 F.3d at 1049; Burch, 400 F.3d at 680-81;

8   Walker v. Barnhart, 148 F. App'x 632, 633–34 (9th Cir. 2005) ("The ALJ's identification of

9   discrepancies between Walker's alleged symptoms and the objective medical evidence including

10  treatment records, the x-ray, and the observations of other medical personnel also provided

11  legitimate reasons for rejecting Walker's testimony."); Reichley v. Berryhill, 723 F. App'x 540,

12  (Mem)–541 (9th Cir. 2018) ("The ALJ provided the requisite specific, clear, and convincing

13  reasons . . . [including] sufficiently [identifying] inconsistencies between Reichley's testimony

14  and the objective medical evidence.").

15       **c.    The ALJ's use of the Reported Activities of Daily Living was Proper**

16       The ALJ may consider the claimant's daily activities in making a credibility

17  determination.  See Diedrich v. Berryhill, 874 F.3d 634, 642-43 (9th Cir. 2017); Thomas, 278

18  F.3d at 958-59; 20 C.F.R. § 404.1529(c)(3)(i) ("Because symptoms sometimes suggest a greater

19  severity of impairment than can be shown by objective medical evidence alone, we will carefully

20  consider any other information you may submit about your symptoms . . . Factors relevant to

21  your symptoms, such as pain, which we will consider include: (i) Your daily activities.").

22  However, "[o]ne does not need to be 'utterly incapacitated' in order to be disabled."  Vertigan,

23  260 F.3d at 1050 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  In fact, "many home

24  activities are not easily transferable to what may be the more grueling environment of the

25  workplace."  Fair, 885 F.2d at 603.  Only if a claimant's level of activities is inconsistent with

26  her claimed limitations would activities of daily living have any bearing on the claimant's

27  credibility.  Reddick, 157 F.3d 722.

28       There are two ways an ALJ may use daily activities for an adverse credibility finding.

Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).  First, daily activities can form the basis of an adverse credibility determination if the claimant's activity contradicts the claimant's testimony. Id.  Second, "daily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.' "  Id. (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  The ALJ must make specific findings as to the daily activities and their transferability to conclude that the claimant's daily activities warrant an adverse credibility determination.  Orn, 495 F.3d at 639.

Here, the ALJ found that Plaintiff's reported activities contradicted Plaintiff's testimony, stating: "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record," and that the Plaintiff's "reported activities also suggest[ed] that she retained functional abilities."  (AR 19-20.)  The January 5, 2017 record cited by the ALJ in this section does reflect that under the heading "Patient History" and subheading "Activities of Daily Living," Plaintiff answered or affirmed an ability to (1) cook; (2) do laundry; (3) garden; (4) shop; (5) bathe; (6) dress; (7) manage medication; (8) drive; (9) brush her teeth; and (10) self toilet.  (AR 250.)  While the ALJ only cited the January 5, 2017 record as evidence of reported daily activities, this is not a lone record affirming such activities, and identical entries are located in records dated: May 5, 2015 (AR 223), August 11, 2015 (AR 227), November 6, 2015 (AR 230), January 29, 2016 (AR 234), April 19, 2016 (AR 238), July 12, 2016 (AR 242), October 10, 2016 (AR 246), April 3, 2017 (AR 254), May 30, 2017 (AR 258), August 23, 2017 (AR 262), November 21, 2017 (AR 469), February 13, 2018 (AR 482), May 8, 2018 (AR 477), and August 7, 2018 (AR 473).  The hearing testimony is also substantially consistent with these reports, as the Court summarized above, Section II(B), supra, (AR 45-48.)  Plaintiff testified she not have any problems dressing in the morning and does not have any problems bathing or taking a shower; does not have troubles "per se" brushing teeth, combing her hair, washing her face, and other grooming, but these things take longer because of hand pain, especially when lifting up over her head; Plaintiff cooks for herself, though has problems with chopping and standing;

1  Plaintiff does not have any issues shopping or getting groceries or other items for herself; and

2  does not have any problems driving herself.  (Id.)

3      In this instance, the Court finds that the ALJ properly considered Plaintiff's inconsistent

4  statements about her daily activities of daily living and substantial evidence supports the ALJ's

5  finding that Plaintiff's symptom testimony was not consistent with her stated activities.  Robbins,

6  466 F.3d at 884 (conflicting or inconsistent statements can contribute to an adverse credibility

7  finding); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (credibility determination

8  can be based on conflicts between the claimant's testimony and his own conduct, or on internal

9  contradictions in that testimony).

10     While the Plaintiff's arguments have some merit in that the ALJ could have further

11  connected the specific reported daily activities more clearly to specific testimony, giving

12  reasonable deference to the ALJ, even under the clear and convincing standard, the Court finds

13  no remandable legal error.  See Tommasetti, 533 F.3d at 1039-40 ("The ALJ may consider many

14  factors in weighing a claimant's credibility, including . . . the claimant's daily activities . . . [and]

15  [i]f the ALJ's finding is supported by substantial evidence, the court "may not engage in second-

16  guessing . . . the ALJ doubted Tommasetti's testimony about the extent of his pain and

17  limitations based on his ability to travel to Venezuela for an extended time to care for an ailing

18  sister [and] could properly infer from this fact that Tommasetti was not as physically limited as

19  he purported to be.") (internal quotation marks and citations omitted); Batson v. Comm'r of Soc.

20  Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either

21  confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the

22  ALJ . . . The ALJ also noted contradictions in the claimant's own testimony about his activities

23  of daily living [as] Batson claimed that he could not return to work because of pain, yet he also

24  testified that he tends to his animals, walks outdoors, goes out for coffee, and visits with

25  neighbors."); Thomas, 278 F.3d at 959 ("The ALJ gave specific, clear and convincing reasons

26  for discounting Ms. Thomas' testimony. In addition to finding no objective medical evidence to

27  support Ms. Thomas' descriptions of her pain and limitations . . . [and other reasons] . . . The

28  ALJ also found that Ms. Thomas was able to perform various household chores such as cooking,

1    laundry, washing dishes, and shopping."); <u>Burch</u>, 400 F.3d at 680–81 ("the ALJ explained that

2    her daily activities 'suggest that she is quite functional. She is able to care for her own personal

3    needs, cook, clean and shop . . . interacts with her nephew and her boyfriend . . . is able to

4    manage her own finances and those of her nephew[,]' [and] [a]lthough the evidence of Burch's

5    daily activities may also admit of an interpretation more favorable to Burch, the ALJ's

6    interpretation was rational, and '[w]e must uphold the ALJ's decision where the evidence is

7    susceptible to more than one rational interpretation.' ") (quoting <u>Magallanes</u>, 881 F.2d at 750).

8    <center>**V.**</center>

9    <center>**CONCLUSION AND ORDER**</center>

10         Based on the foregoing, the Court finds that the ALJ did not commit error in determining

11    the Residual Functional Capacity, did not have a duty to further develop the record, and

12    sufficiently provided clear and convincing reasons for discounting Plaintiff's testimony. <u>See,</u>

13    <u>e.g.</u>, <u>Brown</u>, 697 F. App'x at 549 ("Because the record evidence was not ambiguous and the

14    record was sufficient to allow for proper evaluation of the evidence, the ALJ was not required to

15    re-contact Brown's doctors or further develop the record . . . [and] the ALJ provided specific,

16    clear and convincing reasons for finding Brown's testimony regarding his symptom severity

17    was not fully credible, including that Brown's testimony was inconsistent with his daily

18    activities."). The Court finds the ALJ's decision to be supported by substantial evidence in the

19    administrative record, and free from remandable legal error.

20    ///

21    ///

22    ///

23    ////

24    ///

25    ///

26    ///

27    ///

28

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff April Schillaci.  The Clerk of the Court is DIRECTED to CLOSE this action.

IT IS SO ORDERED.

Dated:   **September 29, 2021**

UNITED STATES MAGISTRATE JUDGE